**PSM HOLDING CORP., a corporation, Plaintiff–counter–defendant–Appellee,**

v.

**NATIONAL FARM FINANCIAL CORPORATION, a corporation; et al., Defendants–counter–claimants–Appellants.**

Nos. 08–55161, 08–55271.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 2009.

Filed June 18, 2009.

Linda Dakin–Grimm, Esquire, Milbank Tweed et al., LLP, Los Angeles, CA, for Plaintiff–counter–defendant–Appellee.

Nancy L. Fineman, Joseph W. Cotchett, Cotchett Pitre & McCarthy, San Francisco Airport Office Center, Burlingame, CA, Robert B. Hutchinson, Cotchett Pitre Simon & McCarthy, Beverly Hills, CA, Mitchell C. Tilner, Peder K. Batalden, Horvitz & Levy, LLP, Encino, CA, for Defendants–counter–claimants–Appellants.

Before: RYMER and GRABER, Circuit Judges, and ALDRICH,[*] District Judge.

### MEMORANDUM [**]

Defendants–Appellants National Farm Financial Corporation, Business Alliance Insurance Company ("BAIC"), and Larry P. Chao seek reversal of the district court's denial of their motion for judgment as a matter of law. We conclude that the district court erred by allowing the jury to interpret the contract, because the relevant provision was unambiguous and evaluation of extrinsic evidence was unnecessary and inappropriate under California law. The provision at issue required that all parties sign the agreement before it became binding. Several signature lines were left blank. We therefore hold that the parties did not form a valid contract.

Under California law, "[i]t is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence." *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 117 Cal.Rptr.2d 220, 41 P.3d 46, 53 (2002) (internal quotation marks omitted); *see also County of San Diego v. Ace Property & Cas. Ins. Co.*, 37 Cal.4th 406, 33 Cal. Rptr.3d 583, 118 P.3d 607, 612 (2005) ("If contractual language is clear and explicit, it governs." (internal quotation marks omitted)); Cal. Civ.Code § 1638. Here, the second sentence of section 14.11 of the document stated: "This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of *all of the parties* reflected hereon as signatories." (Emphasis added.) In the context of the document as a whole, including all of section 14.11, we find it difficult to conclude that the quoted sentence means anything other than what it plainly says: that the agreement is not binding until all parties have signed.

PSM argues that the quoted sentence does not apply because the section in which it appears relates to "counterparts" and, in PSM's view, there were no counterparts in this case. The agreement at issue provides no definition of the term "counterpart," but Black's Law Dictionary 377 (8th ed.2004) defines "counterpart" as "[o]ne of two or more copies or duplicates of a legal instrument." Even were we to accept PSM's argument that section 14.11 applies only if the parties did not sign the same original, there were "counterparts" here under the dictionary definition: Andrew Furgatch's and Larry Chao's method of signing created more than one copy of a legal instrument. Chao signed and faxed a new non-original copy of the signature page (which had been previously signed by Furgatch) back to Furgatch. The quoted sentence—requiring the signatures of all parties before the agreement could take effect—therefore applies even under PSM's interpretation.

No extrinsic evidence was introduced regarding the meaning of section 14.11; it was not a term over which the parties quarreled during negotiations. The extrinsic evidence regarding the parties' *behavior*, which suggests that Larry Chao may have thought BAIC bound by the terms of the agreement, cannot substitute for the parties' signatures on the agreement. *See Spinney v. Downing*, 108 Cal. 666, 41 P. 797, 798–99 (1895) (holding that, when a party does not sign a contract and the agreement contemplates that signatures are required, he is not estopped from asserting that there is no contract even if he partially performed his obligations under the contract). There is no alter ego

---

[*] The Honorable Ann Aldrich, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

[**] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

theory in the case that would dispense with the requirement of separate signatures. Nor does the agreement's severability provision or Julie Chao's status as a defendant render section 14.11 ambiguous or alter its signature requirement.

Because section 14.11 is not ambiguous and there was no relevant extrinsic evidence to evaluate, the trial court erred in submitting the issue of the meaning of section 14.11 to the jury. The plain terms of the agreement dictate that no contract was formed because the signature lines for National Farm; Larry Chao, as an individual; and Julie Chao, as an individual, were left blank. As a result, none of the parties could be liable under its terms. We therefore reverse. Because of our holding, we need not reach any of the other issues raised on appeal.

REVERSED.

---

\* This disposition is not appropriate for publication and is not precedent except as provided